UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAMMY SAPP,

    Plaintiff,

v.                                                Case No. 3:14cv409/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Tammy Sapp's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before this court, I conclude the findings of fact and determinations of the Commissioner are not supported by substantial evidence and application of the proper legal standards. The decision of the Commissioner, therefore, will be reversed and the matter will be remanded to the ALJ for further proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Sapp, who will be referred to as claimant, plaintiff, or by name, raises two issues on appeal. Plaintiff claims the ALJ erred in determining she could perform past relevant work as a taxi cab coordinator, (1) as it is actually performed and (2) as it is generally performed. More specifically, claimant says the ALJ disregarded the fact that she had a "composite" job when determining she could perform the least demanding part of the job as a taxi cab coordinator in contravention of POMS DI 25005.020.2.[1] (Doc. 15, p. 3). Claimant also contends that in evaluating her ability to perform past work as "generally performed," the ALJ erred because there is no "counterpart job found in the Dictionary of Occupation Titles (DOT) to return Ms. Sapp to."[2] (Doc. 14, p. 1).

## PROCEDURAL HISTORY

On March 10, 2010, Ms. Sapp submitted applications for DIB and SSI, alleging disability beginning on November 20, 2007. T. 103.[3] The Commissioner denied the applications initially and on reconsideration. T. 103, 198-210. Claimant appeared at a hearing before the ALJ on November 11, 2010 and elected to postpone the hearing to obtain a representative. T. 103, 237. The ALJ held a second hearing on

---

[1] The POMS, which stands for Program Operations Manual System, is a primary source of information used by Social Security employees to process claims for Social Security benefits.

[2] The Dictionary of Occupational Titles is a publication produced by the United States Department of Labor that defines over thirteen thousand different types of work. *See* Dictionary of Occupational Titles (DOT), U.S. Dep't of Labor, Employment and Training Administration, Fourth Ed. Revised 1991; 20 C.F.R. 404.1566 (d) (2014).

[3] The administrative record, as filed by the Commissioner, consists of 10 volumes (docs. 12-1 through 12-10) and has 756 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

February 27, 2012 and decided to request consultative examinations to address plaintiff's allegations of neurological deficits. T. 167-170. On September 12, 2012, the ALJ held a supplemental video hearing, following which the ALJ determined Ms. Sapp was not disabled under the Act. T. 103-122. The Appeals Council denied claimant's request for further review on June 27, 2014, and the ALJ's decision became the final determination of the Commissioner. T. 1-7.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

• Claimant meets the insured status requirements of the Social Security Act through September 30, 2011. T. 105.

• Claimant did not engage in substantial gainful activity during the following period: September 2009 through June 2010 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). T. 105.

• There has been a continuous 12-month period during which claimant did not engage in substantial gainful activity. T. 106.

• Claimant has the following severe impairments: lumbar and cervical spondylosis, lumbar and cervical degenerative disc disease ("DDD"), chronic obstructive pulmonary disease ("COPD"), obesity, headache disorder, partial tendon tear and calcified tendonitis of the left shoulder, and myofascial syndrome[4] (20 CFR 404. 1520(c) and 416.920(c)). T. 106.

---

[4] Myofascial syndrome is a chronic pain disorder.

Case No. 3:14cv409/CJK

- Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.9260). T. 108.

- Claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), in function by function terms (SSRs 83-10 and 06-8p), with certain non-exertional restrictions associated with that level of exertion. Plaintiff can lift and/or carry ten pounds occasionally and items of negligible weight frequently. Plaintiff can stand and/or walk for two hours, no more than thirty minutes at a time, and sit for six hours, no more than one hour at a time. Plaintiff can occasionally push and/or pull with the left upper extremity and occasionally push and/or pull with the lower extremities, bilaterally. Claimant can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. Claimant cannot crawl or climb ladders, ropes, or scaffolds. Claimant can perform no overhead reaching with the left arm but can occasionally reach in other directions with the left arm. Plaintiff can reach with the right arm frequently. Claimant can handle with the left hand occasionally and handle with the right hand frequently. She can frequently feel, bilaterally, continuously finger with the right hand, and frequently feel with the left hand. Claimant can tolerate occasional exposure to extreme cold, extreme heat, vibration, and pulmonary irritants. Plaintiff must avoid all exposure to unprotected heights and dangerous machinery. T. 108-09.

- Claimant is capable of performing past relevant work as a taxi cab coordinator. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

T. 122.

- • Claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). T. 122.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[5]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

---

[5] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 3:14cv409/CJK

1.   If the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[6]

5.   Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates claimant's residual functional capacity and vocational factors, claimant is not disabled.

## FACT BACKGROUND[7]

Ms. Sapp contends her chronic back issues prevent her from being able to resume her occupation of taxi cab driver and coordinator. T. 134-35. Claimant testified before the ALJ on February 27, 2012 as to her longstanding history of

---

[6] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[7] Plaintiff is not challenging the ALJ's findings regarding her alleged impairments. As plaintiff acknowledges, therefore, her medical history has no bearing on the issues raised in this appeal and thus need not be discussed. The facts set forth were derived primarily from plaintiff's testimony at the hearing and also the administrative record.

Case No. 3:14cv409/CJK

employment in the taxi cab business and the manner in which her impairments prevent her from being able to continue that line of work. T. 129-153. From 2002 through 2004, Ms. Sapp was self-employed through her taxi cab business. T. 159. She testified that during that time, she was in a partnership that employed taxi cab drivers and that her job duties were multifaceted. T. 159-160. Throughout her time in the partnership, she was responsible for dispatching, vehicle maintenance, and other clerical aspects of the business, more so than being employed as a full-time driver. T. 160. Claimant stopped driving taxi cabs in 2010 as a result of constant joint and back pain and loss of feeling in her hands. T. 161. After plaintiff's testimony as to the loss of feeling in her hands, the ALJ adjourned the hearing and required plaintiff to undergo nerve conduction studies to determine any associated impairments for purposes of determining residual functioning capacity. T. 168-69.

A supplemental hearing took place on September 12, 2012, at which claimant and a vocational expert, Ms. Lynn Waters, testified as to claimant's impairments and the effect they would have on claimant's ability to perform her past work. T. 129-53. When prompted by the ALJ, the vocational expert asked claimant whether her job as a taxi driver and "private owner" meant claimant was the sole operator of one vehicle or employed other drivers. T. 142. Ms. Sapp responded that she had been both the sole driver of a car and a member of a partnership that employed other drivers. T. 142. Plaintiff explained that from 2009 to 2010, she did not have any employees and drove a taxi cab herself. T. 143. She last had employees in 2004. T. 143. During the time she employed other drivers, from 2001 through 2004, she provided dispatching services and vehicle maintenance – *i.e.*, performed the clerical aspects of the business. T. 144.

The ALJ asked the vocational expert to list claimant's title and exertional and skill level for every job claimant had performed in the past fifteen years. T. 144. The witness separated claimant's job functions into three categories – taxi cab driver, taxi cab coordinator, and taxi cab supervisor. T. 144-45. The expert then categorized the taxi cab driver position as "medium," the supervisor position as "light," and the taxi cab coordinator position as "sedentary." T. 144-45. The ALJ then posed a hypothetical question to the vocational expert, taking into account all of claimant's documented impairments and limitations and asking the vocational expert to determine whether such a person would be able to perform claimant's past work. T. 148-49. The vocational expert testified that given the hypothetical limitations, the person would be able to perform only the "sedentary" duties of taxi cab coordinator. T. 149. The ALJ relied on the vocational expert's testimony in determining Ms. Sapp was not disabled under the Act because she could perform past work as a taxi cab coordinator, both as "actually performed" and as "generally performed."

## ANALYSIS

Claimant contends the ALJ erred (1) in his " as actually performed" step four analysis because he disregarded the fact that she had a "composite" job when determining she could perform past relevant work as a taxi cab coordinator; and (2) in his "as generally performed" analysis because there is no equivalent job in the DOT. The regulations provide that an ALJ may use the services of a vocational expert to help determine if a claimant can perform her past relevant work and that the vocational expert may offer relevant evidence within her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as it is generally performed in the

national economy. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). A claimant may be found not disabled if the evidence shows that she retains the RFC to perform the functional demands and job duties of a past relevant job as she actually performed it. Alternatively, the DOT can be used to define the job as it is usually performed in the national economy, although "[i]t is understood that some individual jobs may require somewhat more or less exertion than the DOT description." SSR 82-61, 1982 WL 31387, at *1-2 (S.S.A. 1982); *see* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (an ALJ may use the DOT to obtain evidence on whether a claimant can perform her past relevant work). Here, the ALJ gave the vocational expert's testimony considerable weight, relying on it in concluding at step four that claimant was not disabled because she could perform the job of taxi cab coordinator as actually performed.

Plaintiff is correct that the ALJ did not consider her prior relevant work in the taxi cab business as a composite job. Indeed, neither the vocational expert nor the plaintiff made any mention of composite jobs. Instead, the vocational expert analyzed each aspect of claimant's previous work in the taxi cab business, as described by plaintiff, and opined that she could perform the job of taxi cab coordinator. The vocational expert testified that the position of taxi cab coordinator was sedentary work and referred to the DOT number for the job. The vocational expert also testified to the classification of plaintiff's other past work, including taxi driver and cab supervisor, and provided the DOT numbers for those positions as well, which the vocational expert found plaintiff incapable of performing.

As plaintiff points out in her reply, there was no evidence and no finding that plaintiff was ever substantially gainfully employed as a taxi cab coordinator. The ALJ thus erred in finding at Step 4 that plaintiff had past relevant work as a taxi cab

coordinator. The ALJ cannot segregate one aspect of a claimant's past relevant work and determine at step four that she can perform past relevant work because she is able to perform one aspect of it. Considering that the ALJ failed to make a finding that claimant was substantially gainfully employed as a taxi cab coordinator, his analysis – including the conclusion that plaintiff could return to past relevant work – was flawed, necessitating remand.[8]

## CONCLUSION

For the reasons set forth above, the undersigned finds that the Commissioner's decision is not supported by substantial evidence and application of the proper legal standards and therefore should be reversed.[9] *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is ORDERED:

1. The decision of the Commissioner is REVERSED and this matter is remanded to the ALJ for additional findings consistent with this order.

2. The clerk is directed to close the file.

---

[8] Given the finding that the ALJ's decision is not supported by substantial evidence based on his Step 4 analysis, the undersigned need not address plaintiff's second assignment of error.

[9] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Case No. 3:14cv409/CJK

DONE AND ORDERED this 20th day of November, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**